20956

Dewey E. CAMPBELL, Appellant, v. Robert G. BERWIND, M.D., Respondent.

(255 S. E. (2d) 344)

*James T. McLaren,* Columbia, *for appellant.*

*J. Kendall Few,* Greenville, *for respondent.*

May 14, 1979.

*Per Curiam:*

This malpractice action was brought by the plaintiff, Dewey E. Campbell, against his physician and surgeon, Dr. Robert G. Berwind, alleging that he lost one kidney as a result of the negligent surgery performed by the defendant.

The jury returned a verdict in favor of the defendant. The plaintiff has appealed, alleging errors in the admission of evidence. We reverse.

The following facts are alleged in the complaint and admitted in the answer: The defendant examined the plaintiff and advised him that he had a calculus formation in his lower ureter. The patient was advised that a stone manipulation and possible ureterolithotomy to remove the object would be advisable. On the following day, the plaintiff successfully passed the calcification, commonly called a kidney stone. It was delivered to the station of the nurse, who in turn noted the passing of the stone upon the hospital records. After the stone had been passed, the defendant advised the plaintiff that he still had the stone within his ureter and possibly surgery would still be required. Plaintiff protested that he had passed the stone, felt fine, and thought he should be permitted to leave the hospital. The defendant insisted that the stone was still within the ureter. Three days after the stone had been successfully passed, the defendant performed a cystoscopy to remove the alleged stone, but was unsuccessful. Thereafter, the defendant operated on the plaintiff for the purpose of removing the kidney stone. Some two weeks later, he again operated in an attempt to correct his kidney condition.

Thereafter, the plaintiff entered the Veteran's Administration Hospital in Columbia, where additional surgery was performed and his left kidney removed. The answer of the defendant admits that this operation was unsuccessful, but asserts that the $x$-ray taken indicated the presence of a stone in plaintiff's distal ureter. The gravamen of the defense is that the defendant ". . . used reasonable care and diligence in the exercise of his skill and the application of his learning in treating the plaintiff; and at all times during such treatment defendant acted according to his best professional judgment." The answer further asserts that the defendant ". . . performed each and every act of such medical attention and treatment properly and efficiently. . . ."

That the plaintiff has suffered injuries is beyond debate; that the action of the defendant proximately caused the injuries cannot be seriously disputed. The basic contest then relates to alleged negligence.

There were in evidence several hospital records from the Veteran's Administration Hospital, made by or under the direction of other medical doctors. The plaintiff in this appeal alleges error ". . . in permitting the respondent [Dr. Berwind] to testify to the opinions and conclusions of others by reading hearsay reports of others into evidence and by drawing conclusions from the opinion and conclusions contained therein." We need not go much beyond the agreed statement of fact, which is binding on this court, to find that error was committed. The statement contains the following:

"During the trial of the case, Respondent [Dr. Berwind] was allowed on direct examination to testify from the written reports of Dr. G. H. Vera, Dr. L. J. Paul, Dr. J. E. Ramin, Dr. G. K. Rao, Dr. William Klauber, Dr. Neville, Dr. David, and Dr. Vila, regarding their findings, *impressions, conclusions,* and other unsworn out-of-court statements. Appellant interposed his objections and was overruled." (Emphasis added.)

While the defendant, Dr. Berwind, was being examined by his own attorney, the following occurred:

"Q. So, then, as to the number of doctors that concluded that there was a stone, number one would be Dr. Wood; number two would be Dr. Berwind; number three would be Dr. Klauber; number four would be Dr. Neville; number five would be Dr. Vera; number six would be Dr. Paul; number seven would be Dr. Ramin, the man whose deposition they introduced; and number eight would be Dr. Rao. Is that correct?

"A. That is correct.

"Q. And these eight doctors concluded that there was a stone in one, two, three, four, five, six, seven, eight, nine, ten, eleven—

"MR. KENNEDY: I object to him drawing conclusions, Your Honor—

"Q. (By Mr. Few:)—twelve, thirteen.

"MR. KENNEDY:—of what the doctor's—the doctors' reports speak for itself. He's drawing conclusions from what the doctor said.

"THE COURT: Well, ask your question, Mr. Few.

"MR. FEW: All right, sir.

"Q. (By Mr. Few:) Did they conclude that in thirteen separate reports?

"MR. KENNEDY: I object to him leading his witness, Your Honor.

"Q. (By Mr. Few:) How many reports did they conclude that in?

"A. In thirteen separate, independent reports, by separate independent doctors, all eight doctors came up with one uniform diagnosis—calculus, stone, calcified density, something in the distal left ureter.";

The objection to his drawing conclusions should have been sustained. The reports were in evidence and either party was at liberty to publish all or any relevant portions to the jury. It was for the jury to say whether the reports in evidence warranted the conclusions; it was not the province of the witness to interpret the reports. No hypothetical question was framed. The defendant's counsel could, of course, argue to the jury that the reports warranted the conclusion that there appeared to have been a stone, but it was not for the defendant to interpret the evidence submitted by other witnesses by way of the medical reports.

We are not concerned with whether the reports were or were not hearsay. They were marked as exhibits and were accordingly for consideration by the jury. They were used in an improper way to the prejudice of plaintiff's case. The defendant, by interpreting the reports, invaded the province of the jury.

Reversed and remanded.